IN THE MATTER OF THE BIG RACCOON CONSERVANCY DISTRICT, BOARD OF DIRECTORS OF BIG RACCOON CONSERVANCY DISTRICT *v.* KESSLER FARMS CORPORATION.

[No. 1-1275A236. Filed June 1, 1977. Rehearing denied July 14, 1977.]

*Harold W. Jones, Gordon Dempsey, Smith and Jones,* of Indianapolis, *Rexall A. Boyd, Lyon and Boyd,* of Greencastle, for appellant. *Vernon E. St. John,* of Lafayette, for petitioners for dissolution.

*James M. Houck, Houck and Houck,* of Greencastle, for appellee.

ROBERTSON, C.J.—On August 11, 1966, the Putnam Circuit Court issued its Order Establishing the Big Raccoon Conservancy District, including specified land located in Putnam County and Montgomery County, Indiana.[1] The Putnam Circuit Court approved the district plan November 5, 1969, and ordered implementation by the Board of Directors.

A Petition to Dissolve the Big Raccoon Conservancy District was filed November 4, 1971, by 1,116 of the total 1,636 freeholders in the district. On September 18, 1973, the Putnam Circuit Court denied the Petition to Dissolve. In proceedings not before this court at this time, the petitioners for dissolution continue to seek a reversal of that judgment.

Kessler Farms Corporation (appellee herein) filed a Petition for Mandate on December 16, 1974, pursuant to Section 51 of the Conservancy District Act,[2] seeking an Order requiring the Board of Directors to implement the district plan. The Board of Directors filed a responsive pleading, "[r]eserving the right to respond further after reasonable opportunity

---

1. All proceedings concerning the conservancy district are controlled by the Conservancy District Act, IC 1971, 19-3-2-1 *et seq.* (Burns Code Ed.).

2. Section 51:

"Any interested person, having a legal interest adversely affected by any action, committed or omitted by the board of directors, which action is in violation of the provisions of this act, may petition the court having jurisdiction over the district to enjoin or mandate the board of directors, as the case may be." IC 1971, 19-3-2-51 (Burns Code Ed.).

to marshal evidence on its behalf. . . ." Kessler Farms filed a Motion for Summary Judgment on Petition for Mandate, and the Board of Directors subsequently filed a Petition for Leave to File Affirmative Defenses, a Request for the Court to Take Judicial Notice of the Pleadings and Order Book Entries, and affidavits of three members of the Board of Directors. Kessler Farms responded with Objections to Respondent's Petition for Leave to File Affirmative Defenses.

On August 19, 1975, the trial court entered its Order

(a)  denying the Petition for Leave to File Affirmative Defenses;

(b)  sustaining the Motion for Summary Judgment on Petition for Mandate; and

(c)  ordering the Board of Directors to implement the district plan.

The Board of Directors perfected its appeal and raises five issues.

The Board contends that the trial court erroneously construed Section 97 as an exclusive procedure for dissolving a conservancy district; if such construction is held to be correct, then the Act deprives the people of their fundamental right of local self-government by denying the people of the locality their constitutional right to dissolve by consensus.

Section 97 provides as follows:

"A district may be dissolved by the same procedure used to establish it. The petition shall set forth such change of circumstances which causes the district to be no longer of benefit. If the court find that the district is no longer of benefit, the court shall order the district dissolved and order the board of directors to take necessary steps to terminate all activities of the district. . . . " IC 1971, 19-3-2-97 (Burns Code Ed.).

When the court is called upon to construe words in a single section of a statute, it must construe them with due regard for all other sections of the Act and with due regard for the intent of the legislature "in order that the spirit and purpose of the statute be carried out."

*Indiana State Highway Commission* v. *White* (1973), 259 Ind. 690, at 695, 291 N.E.2d 550 at 553. The legislative intent ascertained from considering the Act as a whole will prevail over the strict literal meaning of any particular word used in the Act. *Combs* v. *Cook* (1958), 238 Ind. 392, 151 N.E.2d 144.

Although Section 97 uses the word "may", we find that Section 97 dictates the required procedure for freeholders to seek dissolution of an established conservancy district. Section 1 evinces a policy to provide uniform procedures for advancing the purposes of the Act.[3] To allow dissolution of an established district by any and all means not specifically barred by the Act would defeat the stated policy.

The activities involved in establishing a district and implementing a district plan may prove arduous and time consuming. Certainly it is for the benefit of all concerned to respect a procedure which demands the same thorough investigation of circumstances before dissolution as is demanded before establishment of the district.

Careful consideration has been given to the Board's arguments based upon the provisions of Article 1, Sections 1 and 31, of the Indiana Constitution. In *Martin* v. *Ben Davis Conservancy District* (1958), 238 Ind. 502, 153 N.E.2d 125, our Supreme Court considered a series of allegations that the Conservancy District Act was unconstitutional. The Supreme Court concluded that

> "[t]he legislature has the power to directly create, fix and define public improvement districts for drainage, roads and other like improvements. \* \* \*

---

3. Section 1, in part:
"The management of water being necessary to the welfare of Indiana, it is the policy of this act:
"(1) To enable the owners of land to organize special districts with power to tax and with other necessary powers so that maximum beneficial utilization can be made of the water resources of the state.
"(2) *To provide in one act a general procedure* through which each of the various legitimate purposes, authorized in section 3, may be attained where they are needed." (Emphasis added.) IC 1971, 19-3-2-1 (Burns Code Ed.).

"Where the legislature does not see fit to directly establish by legislation a district or area for public improvement, but provides the procedure by which such areas may be established, those persons affected thereby are entitled to notice and to be heard before their rights are adjudicated under due process." 238 Ind. 502, at 524, 153 N.E.2d 125 at 135-36.

Because the conservancy district is a creature of the legislature, the legislature may prescribe the procedure for dissolving the district as well as for establishing it. The Conservancy District Act provides for notice and hearings, and it permits appeal from the trial court's rulings regarding petitions to establish or dissolve the district. We find that the Conservancy District Act, as interpreted and applied by the trial court, does not violate the Indiana Constitution.

The Board contends that the trial court erred in finding that the doctrine of res judicata prevented consideration of the question of dissolution.

> *Amann* v. *Tankersley* (1971), 149 Ind. App. 501, at 509, 273 N.E.2d 772 at 777, lists eight essential elements required for application of the doctrine of res judicata:

    (1)   a suit and an adversary proceeding;
    (2)   a final judgment;
    (3)   a decision on the merits;
    (4)   rendered by a court of competent jurisdiction;
    (5)   identity of parties;
    (6)   identity of subject matter or issues;
    (7)   capacity of parties;
    (8)   mutuality of estoppel.

The Board argues that the doctrine of res judicata should not apply because there was no identity of issues or of parties, and there was no final judgment.

The Board reasons that any determination as to the propriety of dissolution in 1973 was based upon circumstances different from those that would be considered in determining

the same question in 1975. We agree. The fact that dissolution has been considered once and rejected does not mean that the district cannot be dissolved later if changed circumstances dictate a subsequent dissolution. The trial court erred in its finding that "the issue of dissolution is res judicata at this time." For reasons stated hereinafter, however, we find that such error was harmless.

The Board argues that the trial court erred when it denied the Board's Petition for Leave to File Affirmative Defenses, the denial being based upon the erroneous premise that the doctrine of res judicata barred consideration of the question of dissolution.

The affirmative defenses proffered by the Board vary only slightly from allegations made in its initial response filed February 7, 1975. Both pleadings allege that the Board was inactive due to directions from the trial court, and that the district should be dissolved because (a) changed circumstances had caused costs to outstrip benefits; (b) the majority of freeholders wanted the district dissolved; and (c) funds were not available.

The Act imposes upon the Board the duty to place the district plan in operation. (Section 61). Each director takes the following oath:

"I do solemnly swear that I shall, to the best of my ability, strive to accomplish the purposes for which the district is established and properly to operate and maintain its works of improvement." IC 1971, 19-3-2-38 (Burns Code Ed.).

The Board insists that, in private conversation, the Judge of the trial court ordered it to remain inactive. We find it unnecessary to consider this defense. The mandate imposes no penalty for past inaction and clarifies the trial court's expectations for the future.

The Board does not cite and this Court has not found any provision in the Conservancy District Act which authorizes

the board to seek dissolution. Section 97 provides the prescribed procedure for freeholders to seek dissolution of the district. The majority of the freeholders did petition for dissolution, and the subsequent statutory proceedings resulted in an Order that the district should not be dissolved.

The Act prescribes procedure for appeal. A judgment is final pending appeal. *Indianapolis* v. *Pollard* (1960), 240 Ind. 507, 166 N.E.2d 648. If the trial court has stymied the attempt to appeal, as the board alleges, Trial Rule 53.1 provides a remedy.[4]

We find that the affirmative defenses of the Board of Directors were more detailed but basically repetitive of affirmative statements made in the Board's initial response. These defenses were not statutorily available to the Board of Directors. The Board was seeking dissolution collaterally when it lacked power to seek dissolution directly. The trial court did not commit reversible error when it denied the Petition for Leave to File Affirmative Defenses.

The Board contends that the trial court used prima facie evidence that the district *should* be dissolved, as part of the basis for its finding that as a matter of law the district should *not* be dissolved.[5] The Board's argument is not preserved by its specification in the Motion to Correct Errors. That specification is as follows:

---

4. Petitioners for dissolution filed a Motion to Correct Errors after the trial court denied the Petition to Dissolve. The trial court denied the Motion to Correct Errors in December 1973, but petitioners for dissolution and the board of directors allege that the trial court failed to give notice of its ruling. When Kessler Farms Corporation filed its Petition for Mandate on December 16, 1974, it referred to the trial court's ruling on the Motion to Correct Errors. On December 20, 1974, petitioners for dissolution filed a Trial Rule 60(B)(8) Motion to have the Order denying the Motion to Correct Errors vacated and re-entered; the trial court denied this Motion. Petitioners for dissolution filed a Motion to Correct Errors February 18, 1975, and the trial court has not ruled on that Motion to Correct Errors.

5. The Board refers to a portion of Section 98:
"If the Board of Directors fails to produce within two years satisfactory evidence of the progress in the preparation of the district plan . . . , it shall be prima facie evidence that the district should be dissolved." IC 1971, 19-3-2-98 (Burns Code Ed.).

"The Court erred in its findings that the Board of Directors of the Big Raccoon Conservancy District has taken no significant steps to implement the District Plan. Such finding is not supported by sufficient evidence and is contrary to law."

The specification challenges the trial court's finding that the Board had remained inactive. The Board's argument addresses the use allegedly made of that finding.

Had the argument been properly preserved, it fails on the merits also. The trial court's findings were concerned with the action or inaction of the Board of Directors with reference to the propriety of issuing a mandate to the directors to perform their duties. The issue of dissolution was not properly before the trial court, so Section 98 was not relevant. Further, the portion of Section 98 on which the Board relies refers to progress in preparation of the district plan. The district plan for the Big Raccoon Conservancy District was approved November 5, 1969.

The Board's final contention is that the trial court erred when it granted summary judgment, for there was a genuine issue as to the availability of federal funds.

Trial Rule 56 provides that summary judgment shall be rendered:

". . . if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

When this court reviews the grant of summary judgment, it must determine whether there is any genuine issue of material fact, and whether the laws were correctly applied. *Hale* v. *Peabody Coal Co.* (1976), 168 Ind. App. 336, 343 N.E.2d 316. We are guided by the following standards, as set forth in *Hale* v. *Peabody Coal Co.*, *supra:*

"The burden is upon the moving party to establish that no material facts are in genuine issue, *Tapp* v. *Haskins*

(1974), 160 Ind. App. 117, 310 N.E.2d 288, and any doubt as to the existence of a genuine issue of a material fact must be resolved against the moving party. *McGinnis* v. *Public Service Co. of Indiana, Inc.* (1974), 161 Ind. App. 1, 313 N.E.2d 708; *Shaw* v. *S.S. Kresge Co.* (1975), 167 Ind. App. 1, 328 N.E.2d 775. Accordingly, for purposes of determining whether to grant the motion, facts set forth in the non-moving party's affidavits are taken as true, and products of discovery are liberally construed in his favor. *Podgorny* v. *Great Central Insurance Co.* (1974), 160 Ind. App. 244, 311 N.E.2d 640. Finally, even if the facts are not in dispute, summary judgment is not appropriate when the information before the court reveals a good faith dispute as to the inferences to be drawn from those facts. *Yerkes* v. *Washington Manufacturing Co., Inc.* (1975), 163 Ind. App. 692, 326 N.E.2d 629." 343 N.E.2d 316, at 320.

The Board couches its argument in the context of dissolution. It relies again upon Section 98 of the Conservancy District Act:

". . . if federal or state funds, or both, contemplated in the petition for the establishment of the district appear to be unavailable, it shall be prima facie evidence that the district should be dissolved." IC 1971, 19-3-2-98 (Burns Code Ed.).

Section 98 refers to proceedings in which the question of dissolution properly has been presented. As stated previously, the Board of Directors has no statutory power to seek dissolution; therefore, facts that arguably might warrant dissolution will not constitute a defense to the Petition for Mandate. The availability or unavailability of federal funding was not a material fact in these proceedings, so no genuine issue could exist with regard to the federal funding. The trial court did not err when it granted summary judgment on the Petition for Mandate.

Affirmed.

Lowdermilk, J., concurs.

Garrard, J. (participating by designation), concurs.

NOTE.—Reported at 363 N.E.2d 1004.